

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RLC:BSK
F. #2006R01870/NYNYE500Z

*271 Cadman Plaza East*

*Brooklyn, New York  11201*

December 10, 2009

<u>By ECF and Via Facsimile</u>

The Honorable Carol B. Amon
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Fausto Reynoso</u>
     <u>Criminal Docket No. 09-239 (CBA)</u>

Dear Judge Amon:

  The government respectfully submits this letter in connection with the sentencing of defendant Fausto Reynoso ("Reynoso"), who is currently scheduled to be sentenced by this Court on December 16, 2009 at 9:30 a.m.  In his letter dated December 2, 2009, Reynoso makes a number of arguments in support of his request for a sentence of 30 months.  The Presentence Investigation Report ("PSR") indicates that Reynoso's applicable advisory United States Sentencing Guidelines ("Guidelines") level is a 29, with a corresponding range of imprisonment of 87 to 108 months.  (PSR ¶ 96).  For the reasons set forth below, the government requests that the Court sentence Reynoso to a sentence within the advisory Guidelines range.

A. <u>Background</u>

  On March 18, 2009, Reynoso and his co-defendant, Luis Castillo ("Castillo") were arrested in connection with a 150 gram heroin transaction.  The arrest was the result of a several-month long wiretap investigation which revealed that Reynoso was a street-level heroin trafficker who obtained his heroin from suppliers in New York as well as the Dominican Republic and Colombia.  Reynoso sold the heroin to co-defendants Paulino Rojas and Luis Castillo in quantities of heroin ranging from 30 to 100 grams at a time.  (PSR ¶ 28-29).  Based on court-authorized wiretap intercepts, seizures of heroin, and witness statements, the government determined that Reynoso was responsible for selling approximately 3.5 kilograms of heroin during the course of the conspiracy charged in the indictment. (PSR ¶¶ 32-33).

      On September 14, 2009, Reynoso pleaded guilty before this Court to the charge of conspiracy to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

B.    A Sentence Within the Advisory Guidelines Is Warranted in Light of 18 U.S.C. § 3553(a) Considerations

      Interpreting the Supreme Court's decision in United States v. Booker, the Second Circuit has held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005); see 18 U.S.C. § 3553(a). Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." Id. at 113.

      Most recently, in Gall v. United States, 552 U.S. 38 (2007), the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." 128 S. Ct. 586, 596 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 49 (citation and footnote omitted).

      Reynoso sets forth numerous claims to justify a non-Guidelines sentence, most of which are already accounted for within the Guidelines themselves. For example, Reynoso argues that he is entitled to a non-Guidelines sentence because there was no violence involved in the offense, a weapon was not used and no one died from the heroin Reynoso was distributing. However, the absence of these factors does not justify a non-Guidelines sentence; rather, the advisory Guidelines set a base offense level and the presence of these factors would have resulted in a higher base offense level. See U.S.S.G. Section 2D1.1(b)(1) (two-level increase for use of a dangerous weapon);

Section 2D1.1(d)(cross-referencing murder guidelines if death results); Section 2D1.1(a)(1) and (2) (higher offense level if death or injury occurs from use of the drugs).  Reynoso also argues that he did not supervise or manage any other member of the conspiracy.  Again, had Reynoso supervised anyone, he would have received an enhancement for supervisory role under U.S.S.G. Section 3B1.1; the fact that he did not supervise anyone does not warrant a non-Guidelines sentence.

     Reynoso also asks this Court for a non-Guidelines sentence because the heroin he was selling was of a low purity.  Application Note 9 of the advisory Guidelines authorizes only an upward departure; it does not authorize a downward departure for drugs of lower purity.  Further, throughout the wiretap conversations, Reynoso can be heard complaining to his co-defendants about the poor quality of the heroin; thus, he should not be rewarded when he would have vastly preferred a product with a higher purity.

C.   A Lower Sentence is Not Warranted Because Reynoso
     Will Be Deported or Face Collateral Consequences
     Based on His Alienage

     Reynoso argues that this Court should impose a non-Guidelines sentence because he will be deported once he has served his sentence.  (Def. Ltr at 11).  The Second Circuit has rejected this argument in United States v. Wills, 476 F.3d 103, 107 (2d Cir. 2007).  The defendant in Wills argued that his certain deportation was an added punishment, warranting a sentence reduction.  The district court agreed and reduced the defendant's sentence and the government appealed.  The Court of Appeals found that it was improper for the district court to factor deportation in as an "additional punishment:"

> Indeed, this was the exact treatment rejected in Restrepo, a pre-Booker case under the mandatory Guidelines regime.  In that case, we noted that the district court's reduction of the prison term in recognition of those hardships [caused by deportation] does not eliminate the hardships or make the effects less harsh; rather, it advances the day when deportation will occur.  U.S. v. Restrepo, 999 F.2d 640, 647 (2d Cir. 1993).  Now after Booker, we reaffirm the reasoning of Restrepo and apply it to Will's non-guidelines sentence.
>
> . . .

3

> A sentencing scheme in which future deportation may lead to diminished sentences would weaken the deterrent effect of punishment. Some potential criminals may consider deportation preferable to imprisonment and would therefore not be deterred from committing future crimes if they thought they would be deported rather than serve all or part of what should be their appropriate prison term.

Will, 476 F.3d at 108. Thus, this Court should not reduce Gomez's sentence based on the fact that he will be deported.

Reynoso next argues that this Court should reduce his sentence because, as an alien, he will face collateral consequences which affect his sentencing, e.g., his security level will be higher than that of a citizen, program eligibility while in custody will be limited, his designation will be more harsh, and he will not be eligible for work release or a halfway house. (Def. Br. 9). The Second Circuit has also rejected this argument.

In United States v. Restrepo, 999 F.2d 640, 647 (2d Cir. 1993), the Court addressed the question of whether the collateral consequences of alienage may be considered as a grounds for downward departure. The district court considered some of the collateral consequences, such as the fact that a defendant cannot be assigned to a halfway house, or will spend extra time in confinement after the completion of a sentence, awaiting deportation. The Court squarely held that these very conditions could not serve as a valid basis for downward departure. Id.; see also Rivera v. United States, 893 F. Supp. 1238, 1244 (S.D.N.Y. 1995)(same).

Since Restrepo, courts have routinely summarily rejected requests similar to Gomez's. See, e.g., Rojas v. United States, Nos. 08-CV-0075A, 03-CR-0034A, 2008 WL 495502, at *1 (W.D.N.Y. Feb. 20, 2008) (holding that petitioner's inability to take part in a drug abuse program was an inadequate basis for a reduced sentence); Hernandez v. United States, 280 F. Supp. 2d 118, 125 (S.D.N.Y. 2003) (holding that petitioner's ineligibility for a minimum security prison due to being a deportable alien is not basis for a reduced sentence); Eze v. United States, No. 93 CIV. 5278 (RWS), 1994 WL 132242, at *1-2 (S.D.N.Y. 1994) ("As the grounds raised and rejected by the Second Circuit in Restrepo are identical to those raised by [defendant] in this action, [defendant's] petition for habeas relief must be denied"); Narvaez v. United States, 1993 WL 535066, at *1-2 (S.D.N.Y. Dec. 21, 1993) (noting that the Second Circuit "specifically rejected

the two collateral consequences raised by the petitioner").

In summary, while this Court, in making an individualized decision regarding Reynoso's sentence, is not precluded from considering various factors as they are unique to Reynoso, the simple fact of his alienage, and the collateral consequences, including deportation and the absence of certain preferable programs in the Bureau of Prisons, are not grounds for downward departure.

<u>Conclusion</u>

For the reasons set forth above, the government respectfully requests the Court to sentence Reynoso within the advisory Guidelines range of 87 to 108 months.

                          Respectfully submitted,

                          BENTON J. CAMPBELL
                          UNITED STATES ATTORNEY

BY: _____
     Bonnie S. Klapper
     Assistant U.S. Attorney
     (718) 254-6426

cc.: Michelle Espinosa, U.S.P.O.(By fax)
     Richard Signorelli, Esq. (By fax)